We're going to move now to Appeal 22-1653, Gill v. Schultz. We're going to hear first, Mr. Hall, from you. Good morning, and may it please the Court, Oliver Hall on behalf of the Appellants. This case presents a challenge to the constitutionality of Illinois' ballot access requirements for independent candidates for the United States House of Representatives. These requirements are so restrictive that no candidate has overcome them to qualify for Illinois' ballot in 48 years. They are severely burdensome under every metric this Court has used to test the constitutionality of ballot access requirements, and they are unconstitutional under the standards the Supreme under Jyn S. V. Fortson, and because under Storer v. Brown, past experience shows that reasonably diligent candidates cannot comply with them. Before we get to merits, justiciability, mootness particularly, even more particularly capable repetition, intubating review. Is there authority that that exception to the mootness doctrine applies after a decennial redistricting? Your Honor, I'm not aware of any such case. This case, as you're probably aware, is the oldest pending ballot access case in the nation. It's six years old. It's been, it sat in the district court for over a year before we got the last judgment on our cross motions for summary judgment. The fact is the case is much older than most ballot access cases, which tend to be decided rather promptly being election law cases. So I think this case arises under rather unusual circumstances, but the underlying principles involving mootness and the exception for controversies that are capable of repetition yet evading review still apply here. I think we addressed this quite thoroughly in our reply brief, and in particular we relied on the Hero case that this court just decided, in which the court recognized that there need not be an identical repetition of fact in order for the mootness, the capable of exception, sorry, the capable of repetition exception to apply. Well, the Hero case relied on, the first case that came out here relied on Gill, Gill 1, I'll call it. Your circumstances here have changed. I don't think you dispute that your client doesn't live in the 13th district anymore, and the 13th district boundaries have changed substantially since he brought this lawsuit. Do you agree with both of those facts? Well, Your Honor, yes. The degree to which they have changed I think is open to question. The fact is the district is still a sprawling rural district that stretches all the way across. Oh, but it picks up areas outside of big cities. Look at the metro St. Louis area. It picks up a substantial number of cities there that are anything but rural. Correct, Your Honor. The point is that the 13th district has changed. There's no denying that. On the other hand, there's also, I think, no denying the fact that there are rural districts in Illinois today, and there will be in the future. You have brought this as an as-applied challenge. How can it be capable of repetition if your client doesn't live in the 13th district anymore? First of all, Your Honor, because my client is permitted to run in any district in Illinois, and that was always true. Second of all- Then how can it be capable of repetition if the boundaries of the 13th district have changed to encompass a lot of non-rural area? Because the standard for the capable of repetition yet evading review exception is that it must be reasonably likely that a materially similar circumstance will arise. And there's just no question that in the future, candidates are going- Mr. Oliver, can you rewind to the point? One of the points you just said is, you may be right, and my understanding coming in may be wrong. So today, as we're talking right now, Dr. Gill does not reside in what is the 13th district right now. Right? Today. That's correct. But your point, the point you just made 30 seconds ago, is that he is a matter of discretion, could nonetheless run as a candidate, independent candidate for the U.S. House of Representatives in the 13th district? Yes, Your Honor. And where does that authority come from? There's no requirement to be a resident of the district. Okay, and you know a ton about this area. I mean, it's what you do. So could he say, I want to run the 1st district, the 2nd district, the 3rd district, whatever he chooses? Yes, that's correct. Okay, and do you know examples of candidates that have done that? Your Honor, off the top of my head- So in other words, it's not just a matter of, well, I can interpret the statute this way, but rather, oh yeah, it happens all the time. It's a matter of qualifications under the federal constitution, Your Honor. I know, right. So assuming they're the right age, I get that. And there is no residency requirement for the district. And so, while I can't identify a candidate who has run in a district in which he did not reside at the moment, certainly it's happened and can't happen again. To return to the- Yeah, your claim here, and the way, at least the way I see it litigated below, it was litigated that, as a package, that the 13th district geography in rural area was part of the package of provisions that made it, that's unconstitutional. Is that fair? Yes, it's certainly fair. The rural nature of the district compounded the burden that was always part of the claim, and it could be part of a future as-applied claim arising from any other rural district. How can it be a future part for the 13th district when the boundaries have changed, and to include a lot of non-rural areas? Judge Saineev, I think the answer to your question is, is it necessary to show, in order for the exception to the mootness doctrine to apply, is it necessary to show that David the 13th district as it was constituted in 2016? And the answer to that question is unequivocally no. The reason is that the Supreme Court held in Wisconsin Right to Life, and this court explicitly adopted the reasoning of Wisconsin Right to Life in HERO, that you need not have an identically similar set of facts. The standard is only that they must be materially similar. And the reason is that- But if you take out the geography, how is it materially similar? Because you have relied heavily on the challenges that Dr. Gill had given the rural nature, and compared it to cities and how you wouldn't have such challenges. So how isn't it materially different if the 13th district now has a lot of territory that is not rural? Again- That's what I'm having a hard time seeing. Because the 13th district still does have, it's still, first of all, it wasn't just rural versus urban. It was county lines being intersected within the district. It was the sprawling nature of the district itself. And it was the fact that much of it was very rural, which is still the case. But again, it's not our burden to show that the 13th district as it's now constituted is identical or sufficiently similar to the 13th district as it existed in 2016. The exception to the mootness doctrine is satisfied if it's reasonably likely that a materially similar situation will occur. And I don't think there's any dispute that a candidate will run for office in Illinois in a rural, sprawling district. Those districts exist now. The 13th district itself is rural and sprawling and has some of the same characteristics. County lines being bisected within the district. And so many of those same problems still exist within the 13th district. Certainly they will exist in future districts and in other districts in Illinois today. My understanding is that you've brought an as-applied challenge to Dr. Gill, not a facial challenge that any candidate could do this. So I don't think the relevant question is whether any candidate would. Isn't the relevant question on an as-applied challenge whether Dr. Gill would? No, Your Honor. Under the exception to the mootness doctrine, Seventh Circuit precedent is clear that the exception will apply even if it's reasonably likely that the same or materially similar circumstances will arise with respect to any candidate. And the Seventh Circuit, we've quoted this precedent in our briefs, in our reply briefs. So no, it need not satisfy a strict same candidate requirement. If I may move on, as we indicated in our briefs, there are three independently sufficient grounds for reversing the district court. One is that it completely failed to apply the fact-intensive analysis that is required of Gill's as-applied in combination challenge, which this court expressly held the district court was required to do in Gill 1. Here the district court did not even address any of the facts on which Gill relies prior to jumping straight into its analysis of his claims. That analysis it proceeded to do by analyzing each of the provisions separately rather than as applied in combination, which is also a direct violation of Seventh Circuit precedent. As the court explained in Lee v. Keith and in Nader v. Keith, the district court is required to address these provisions as applied in combination, not in isolation. And that's explicitly what the district court did. It said I'm going to address each one of these separately, and then I'll get to the as-applied in combination challenge. Can I ask you a question about that, Mr. Hall? I totally understand what you're arguing, but I think when I was reading the district court brief, or opinion in your brief, I thought it's very odd for a district court to sit down to write an opinion talking about the way different requirements combine before first pausing to inform the reader what those individual requirements are. And so I just want to make sure that you're not, I don't mean this in a negative way, that you're just not nitpicking it the way the district court chose to draft its opinion, that there's actually substance to what you're saying. Thank you for the question. It's an important one because this is not a mere formality, right? This improper approach corrupted the district court's analysis. The district court didn't simply explain what each requirement does. The district court analyzed each requirement separately without addressing the overall burden that it imposes as applied in combination, which is the only claim that plaintiffs are pressing in this case. And I think there's no more stark illustration of the faulty result that came out of this The district court on page 22 of its opinion concludes that the as applied in combination burden here is not severe before it even addressed the plaintiff's main argument and the facts on which it relies. And so this is getting it exactly backwards. This is a court reaching its legal conclusion before addressing the relevant facts, which is in direct violation of this court's guidance in Gil 1. The opposite is required to occur. First the court must address the facts, then it must reach its legal conclusions, not the other way around. Do you want to reserve some time or do you want to continue now? I'll try to reserve a minute. Let me just at least mention the other two bases for reversal. One is that the district court relied on improper evidence. This is the same error the district court committed in Gil 1 when this court reversed on that ground as well, which is that the district court here has said, well, when the challenge provisions aren't enforced, candidates can get on the ballot. That shows, therefore, that the challenge provisions are not severely burdensome. That's not even a valid syllogism. That does not follow logically. But also this court reversed on the very same ground. In the previous appeal, the district court relied on candidates who did not have to comply with the challenge provision appearing on the ballot as the basis for concluding that the challenge provisions were not severely burdensome. The district court has repeated the very same error here. The district court also erred by concluding that David Gil was required to present evidence of candidates who have tried but failed to comply with the challenge provisions. The Supreme Court in Storer, in announcing the past experience test, never imposed that burden. The Supreme Court simply said the absence of candidates' ability to comply with challenge provisions will be sufficient to demonstrate that the challenge provisions are severely burdensome. And in the one case that the district court purported to rely on, Gravelin, the court expressly rejected the district court's position here that candidates or plaintiffs have an affirmative duty to present evidence of efforts that have failed to succeed in qualifying for the ballot. Finally, we've already mentioned in our reply brief and in our opening brief the many violations of the Rule 56 standard. I think it's clear we've cited the facts in our reply brief. There are many key facts in this case that the district court simply did not address. The district court repeatedly resolved facts against David Gil, even facts that are not in dispute, such as the difference between rural and urban districts. The district court speculated that urban districts might be more difficult, did not cite any evidence to support that speculation, and then resolved that undisputed issue of fact against Gil. So these are all violations of the black letter law governing Rule 56. And I thank your Honor. Thank you, Mr. Hall. Thank you. We'll now move to Mr. Beechat. May it please the court, my name is Frank Beechat and I represent defendants, the members of the Illinois State Board of Elections. In the first Gil appeal, this court directed the district court to conduct a fact-intensive and district-specific analysis of the burdens caused by the challenged provisions in the specific context of the 13th congressional district. On remand, the district court did exactly that. It considered evidence of Gil's efforts to collect signatures, the geographic features of the 13th district, as well as evidence about other candidates and races before it Every judgment was appropriate in defendants' favor. But while the district court properly performed the Anderson-Burdick analysis, this court should resolve this appeal on the threshold jurisdictional issue of mootness. And that is because plaintiffs have chosen to pursue only a district-specific cumulative effect claim on remand, and the 13th district has been substantially redrawn during redistricting as a result of the 2020 census. Same question, Mr. Beechat, that I pose to Mr. Hall. Are you aware of authority on capable repetition yet evading review as an exception to mootness post-decennial redistricting? No, Your Honor, and the district-specific cases that we cited in our brief do involve vote dilution cases, as plaintiffs pointed out in their reply brief, but the same principle that applies in those cases apply here, because in both contexts, you're looking at a district-specific claim. Plaintiffs brought, I believe, four claims in their original complaint, some of which were not district-specific, some of which were facial challenges to the 5% requirement and the notarization requirement, but on remand, plaintiffs chose to pursue only this district-specific claim, and they litigated the cumulative effect claim throughout as a district-specific claim, which is then what prompted the way that this court discussed the issue in its decision in the first Gill appeal. In that case, this court stated that the district court must consider evidence about the size and population density of the 13th district, and noted that the burden that the challenge provisions impose will vary depending on district. And so, although, so the geographic specifics of the 13th district are not just some minor detail, they're rather a core component to the only claim that plaintiffs are still pursuing. Mr. Biaschek, in the plaintiff's complaint in count four specifically, Dr. Gill identified the 5% minimum, the 90 days, the splitting of populations, and then had general language or any combination thereof, suggesting that you didn't need everything for it to be unconstitutional. Was the case ever litigated that way? I don't believe so, Your Honor. The case was litigated on a very district-specific basis. The plaintiffs argued that the geography of the 13th district in particular created additional burdens that might not be present in another district. The evidence was presented and the record was tailored in such a way as to address that issue. The defendants presented evidence of other districts, both within Illinois and elsewhere in the country, that were more rural and were geographically larger in order to show that the 13th district was not especially rural and did not create unusual burdens. And so that's the evidence that the district court considered. And when the district court issued its decision, it did so on this very district-specific basis. It looked at the evidence specifically of the efforts that Gill and his circulators made to collect signatures, it looked at the specific geography of the 13th district, and it framed its decision in the context of the 13th district. And in addition to that, if plaintiffs had prevailed, the district court would not have been able to provide effectual relief because either the district court could have enjoined the enforcement of these provisions as applied to the old 13th district, but that would be meaningless relief because that district doesn't exist anymore, so it wouldn't accomplish anything. Or the district court could theoretically have enjoined the enforcement of those provisions as to other districts that the court never considered and that about which evidence was not presented. And that's a problem. And we're in a position, Mr. B.S. Chair, where we don't want to obviously issue advisory opinions, yet every time a challenge like this might be brought either two years before a decennial redistricting or on a decennial redistricting, we can't be in a position then where that necessarily results in mooting  So this is the challenge we have. Correct, Your Honor. And in terms of the capable of repetition yet evading review, I would say that neither element is satisfied here. And in terms of the timing, you might be talking about the yet evading review part, but here redistricting happens every 10 years, so it is not a very tiny window. In the Hero case, for example, this court I think cited the three-year period as being especially short. Here we're talking about 10 years. And it's not capable of repetition because nobody is going to run in the old 13th district again. And I think it's important to note that to the extent that there's a challenge to districts that exist now or that exist after redistricting, there's nothing that prevents plaintiffs or any other party from litigating a challenge as to those districts going forward. If Gil plans to run the 13th, 16th, 17th district and wants to bring a district-specific claim, he can. And then at that point, the district court will have evidence before it about the particular burdens that are presented by that district, and the court will have the opportunity if plaintiffs prevail to provide relief that is specific to that district. And plaintiffs also could, as they did prior to remand, bring a claim that isn't district-specific. They could challenge the 5% requirement or they could challenge the different provisions in combination and just say, you know, they're so burdensome that it's unconstitutional in any district. And plaintiffs did initially bring that claim, but then they abandoned it on remand. So Mr. Biascia, it sounds like you agree that if an individual is otherwise qualified, she or he can choose what district to run in. Yes, Your Honor. I don't remember the exact where that comes from, but there is no requirement that you live in the district in which you run, but, I mean, I think it would be reasonable to assume that a candidate is more likely to run either in the district in which they live or at least one that's nearby because it would be easier. Yeah, it's probably the norm, not the exception as a practical matter. Right. It would be easier to attract supporters, it would probably make you a more attractive candidate. I mean, there's just a plethora of reasons why. Your point is that it, that's, that may be the case, but it's neither here nor there given the changes that were affected by the redistricting here. Exactly. And if Gil wants to run in whatever district in the future, you know, he can bring a district-specific claim about that district. And so, there, you know, I guess in sum, there are two changed circumstances which require a different result on mootness in this appeal from the first appeal, and those two are that redistricting has changed, substantially changed, the borders of the 13th District. As Judge Sadie pointed out, it used to run north up to Bloomington and Normal, now it runs south down to, and covers much of the Metro East area, and just a visual review of the two districts shows that it's much more narrow now, and again, you know, if plaintiffs want to bring a 13th District-specific claim on the new district, they can, and at that point the district court would have evidence about, you know, exactly what the population density is, what the geographic size, and the court could perform the analysis that this court directed it to in the first appeal. And is part of your point that in picking up Metro East with a more, and this is embedded in the question that Judge Sadie was asking you, with the increased density of population in the southern tip of the new 13th District, that that very well could materially change the analysis of the burden imposed on the collection of signatures? Yes, Your Honor. Especially in a district-specific claim where the plaintiffs are arguing that the rural nature of the district exacerbates the burdens that any candidate would face. And in terms of, you know, it could affect whether, you know, because one of their arguments is that different urban areas are divided up into different districts, that might not be as much of an issue here because that whole area is covered, but again, this is all evidence that could be presented to the district court on a district-specific claim about the current district. And so, this court should dismiss the appeal as moot because the underlying claim is moot, but if this court does find that the claim is justiciable, it should affirm summary judgment in defendant's favor because the district court performed the fact-intensive analysis that this court directed. Based on that analysis, the district court correctly determined that there was no severe burden and that the challenge provisions were supported by legitimate state interests. On appeal, plaintiffs concede that the provisions are supported by legitimate state interests and their challenge rests only on the argument that they impose a severe burden. It seems that Dr. Gil here put in a tremendous amount of personal effort to try to get all of the signatures required and that he wasn't able to do so. That seems like a significant factor for the burden analysis. It is a factor, Your Honor, and we don't dispute that he did make a tremendous effort to collect signatures, but part of the Anderson verdict test incorporates that the state has a legitimate interest in ensuring that the candidates who make the ballot have a modicum of popular support. And so, the individual candidate's ability to collect signatures, while relevant, can't be determinative because part of the reason for these provisions is to ensure that they have popular support, which is then evidenced through either volunteers who go out and collect signatures or donors who provide the resources by which to get those signatures. What do you make of, I know you're going to say you can't decide the case at that level of generality, but what do you, Mr. Hall makes a fair point, doesn't he, that it's been 48 years, Illinois has erected a pretty high gating or fencing mechanism here. You know, that's a long time for an independent candidate not to appear on a ballot for a congressional seat. I would say a number of things about that, Your Honor. One is that that is just one factor, ballot history is just one factor among others that the court considered. It considered the evidence as a whole. No, but focusing on that, what do you think about it? Well, a number of things on that as well. One is that a number of independent candidates have made the ballot during that period of time, testified in his deposition. And if you look at the election results, there have been independent candidates, congressional candidates for the House in Illinois in 2010, 2018, and 2020. So the district court correctly pointed out that this doesn't act as a, the provisions haven't acted as a bar. In any of these kind of big rural districts in the southern part of the state? I'm not sure. I'm not sure where the 7th district is. The first district I think is kind of on the south side of Chicago and the suburbs. But the point is, but the point that the district court was making is that this evidence doesn't support Plaintiff's proposition that the provisions have acted as a complete bar. For a couple of reasons. One is because we know that some candidates have made the ballot. Also we don't know the signature totals for those candidates. And so it's very possible or likely that those candidates exceeded the signature total and thereby avoided an objection. The defendants presented some evidence to that effect. There's also, the defendants presented evidence of candidates in other races who obtained a comparable signature totals. Candidates in other races granted from different geographic circumstances that obtained far more signatures than were obtained here. And as the district court pointed out, there was no evidence of candidates who had tried to meet this signature total but failed. And so I think what the district court realized is yes, this history is relevant to the analysis. But it doesn't establish what plaintiffs argue that it does. It doesn't conclusively establish that it's impossible to get on the ballot or that it has prevented the ability to get on the ballot. But rather the court considered that evidence in the context of the other evidence. The evidence of Gill's ability to collect signatures. How many circulators it would have taken in order to get the total amount of signatures. How many hours it would have taken to do that. As we did the math in the response brief, so I won't go through it all here, but under plaintiff's own estimates, just going door to door, you could get 220 signatures a week. And if you extrapolate that out, you can figure out how many circulators it would take. And so the court considered all of that evidence and found that it did not support a finding of a severe burden. The court also considered the evidence of the geography of the 13th district, which the court noted was rural but not abnormally rural. It was less rural and smaller than some other districts in the state of Illinois and across the country. And found that the types of burdens that were imposed by the geography of the 13th district were consistent with the burdens that are faced by other candidates. And so the district court did what this court directed it to do, which was look at all the evidence, and all the evidence that's specific to the 13th district, and it just didn't find that this one type of evidence was conclusive on its own. And that it didn't support the conclusion that plaintiffs were asserting. And so the district court did not ignore any evidence, it just didn't reach the conclusion that plaintiffs think it should have based on the evidence that was presented. And unless your honors have any further questions, I'm about out of time. Thank you, Mr. Biaschad. Thank you. Mr. Hall, we used up quite a bit of your time with questions, so we'll give you two minutes on rebuttal. Thank you, Judge Brennan. I'd like to begin with the point about, to return to the point about the geographic nature. Judge St. Eve, you asked whether this case was litigated on the basis of that being not critical to the case. If you look at our briefs, if you look at the way this appeal was argued, and if you look at the way the motion for summary judgment was argued, the geography is certainly a relevant factor. Election law cases do not arise in a vacuum. This case arose from the 13th district. There were aspects of the 13th district that did compound the burden. It's not the most important of the factors that we challenge. In fact, it's the least important. And the court can confirm that just by looking at the way our argument is presented. It seemed like in your opening brief here, the reply was different. But it seems like in your opening brief that you argued that the 13th district geography was an essential part of your claim. Your Honor, not essential. Relevant, not essential. The fact is that the focus of this case is and always has been Illinois' exceedingly high signature requirement, which is higher than any other state but one, Georgia. And in both states, the requirement has acted as an absolute bar to independent candidates for decades and decades. It's 48 years here in Illinois. It's 60-some years in Georgia. So that's the focus of the case. Also, Georgia allows six months to collect the signatures required there, whereas Illinois allows only 90 days. These are the critical aspects of this case. It's what we've always focused on. Can I pause you, though? Go ahead and finish your thought. Please, I'll yield. Okay. So I get that your focus has been on the signature requirement. You were clear in the last appeal. You're clear on it here. But I very much have taken the argument to be the signature requirement in the context that someone like Dr. Gill finds himself wanting to run as an independent candidate in the southern part of the state in this sprawling rural area where district lines are not clear and he's just basically running all around farm country. My word's not his. And that's very, very difficult to meet this high requirement in that context. Is that not an accurate summary? In other words, he's not saying I live in downtown Chicago and the signature requirement is very difficult to meet there. It may be. I think his point is that it's super hard in farm territory. I think that, as I said to Judge St. Eve, that the fact that it arises in the 13th district, which was rural, did compound the burden of complying with the 5% signature requirement. If he were running in Chicago, it may be that the district court's speculation that Chicago would have its own aspects that compound the burden would also be true. The fact is this case arose in the 13th district and so facts pertaining to the 13th district are relevant. They are not essential to the claim and they are not essential to a finding that this controversy is capable of repetition. And again, I go back to the standard that the Supreme Court announced in Wisconsin right to life, which this court expressly applied and expounded upon in the Hero case. This court said it's not necessary to get an identical set of facts in order to invoke the exception. And that's what we're saying here. Sure, the characteristics of the 13th district are relevant. They are not essential. Thank you, Mr. Hall. Thank you, Mr. Biaschat. Case will be taken under advisement.